D'ORGENOY ET AL *vs.* DROZ.

ON AN APPLICATION FOR A RE-HEARING.

No relative nullities in titles, accompanied by possession, not even those resulting from fraud, can be inquired into collaterally : it must be by direct action.

Naked possession for more than a year, creates the presumption of ownership in the possessor, sufficient to put the right owner upon proof of his title. He must make that proof as plaintiff in a direct action for that purpose, and is not permitted to throw the burden of proof on the possessor, by alleging title when he is sued for a disturbance.

So, the person claiming to be the right owner, when sued for disturbance, cannot bring a petitory action until after judgment in the possessory one; and if he is condemned, not until he has satisfied the judgment.

Under the Spanish law, in making donations, no particular form or clause was required ; the consent of the parties, the thing given, and the tradition were sufficient. Even verbal sales and donations were permitted, when tradition followed.

A sale without a *price*, or for a fictitious price, although null as a sale, for want of the essential requisites of that contract, is nevertheless valid as a donation, provided tradition follows.

*Roselius* and *Quemper*, for the defendant and appellant, solicited a re-hearing in this case.

1. This action is essentially a petitory one, and the plaintiff must recover on the strength of his title. He claims the property under *a sale* to his ancestor in 1807. This is the only title which he sets up. The sale is expressly denied, and the issue is *a sale* or *no sale*. The arguments of counsel on both sides were exclusively directed to this point, and no other. The plaintiff never dreamed that the land had been given to his ancestor ; that idea is repudiated by his own assertions from the beginning to the end.

We take it for granted, that courts are bound to decide the questions that are submitted to them by the parties litigant. Hence the rule, that when the court expresses an opinion on a point not raised in the pleadings, such decision does not form *res judicata,* but is considered merely as an *obiter dictum.*

EASTERN DIST. We are at a loss to conceive on what principle the court
*April*, 1839.   could determine that the property claimed by the plaintiff
D'ORGENOY ET AL under *a sale* should be adjudged to him as *a donation*.
*vs.*            When a thing is claimed by a particular title, which is set
DROZ.            forth by the party, he cannot substantiate his right to it by
producing another title.   The *allegata* and *probata* must cor-
respond.   This is not mere form, but substance ; but even if
it were merely form, the court is not at liberty to dis-
regard it.

2. It appears to us, that the moment it was ascertained
that the act on which the plaintiff's claim to the property is
predicated was not a sale, judgment of non-suit ought to
have been rendered against him, reserving to him the right
of claiming it under the donation.   But it may be asked,
why not decide the question at once ?   Why prolong the
litigation between these parties unnecessarily ?   To this we
have two satisfactory answers :  first, we say,, no person
ought to be deprived judicially of what he believes to be his
property, without an opportunity being afforded him of
defending his rights ; and, in the second place, we say, that
the litigation will not be useless ; for if any attempt is ever
made to recover the property under the donation, whether
direct or disguised, we have the most triumphant means of
defence : and with due submission to the court, those means
of defence can be made use of just as well (and, indeed,
much more effectually) by way of exception to the plaintiff's
action, as in a direct suit for the rescission of the donation,
although a different opinion seems to be intimated in the
opinion of the court.   The action is temporary, but the
exception is perpetual.   This rule has been repeatedly recog-
nized by this court.   In the case of *Bushnell* vs. *Brown's
Heirs*, 4 *N. S.*, p. 500, the Supreme Court say, " We think
the district judge erred.   It is true the plaintiff could not
have been heard in a suit against his vendors, but it does
not follow that he could not use as a shield what he could
no longer use as a weapon.   *Quae temporalia sunt agendam,
perpetua sunt ad excipiendum.*"   So, in the case of *Thompson*
vs. *Milburn*, 1 *N. S.*, p. 469, the rule is, " *Lo que tiene*

*tiempo limitado para demandarse in juicio, es perpetuo para*
*exceptionarse."*—*Febrero, p.* 2, *lib.* 3, *cap.* 1, *sec.* 6, *No.* 250.
The same doctrine is also fully developed by Toullier, in his
7th volume, p. 705, No. 596, *et seq.* Our right, therefore, to
urge the grounds of nullity or rescission, by way of exception
against the plaintiff's action, is indisputable. But why did
we not avail ourselves of this right? We answer, that we
could not defend ourselves against the effect of a donation,
when the sole foundation of the claim to the property was a
sale. Now, admitting it to be true, as the court observes,
that the notary who drew up the act, through ignorance,
used the word "sale" instead of the more appropriate expres-
sion "donation"; that the name given to a thing cannot
change its substance, we ask, is that a reason why this cir-
cumstance should be made instrumental in depriving the
appellant of his legal rights? The more we reflect upon the
subject, the more we are convinced, that such a doctrine is
fraught with the most dreadful consequences, and cannot
receive the sanction of this tribunal. The iniquitous results
that must necessarily flow from such a course of proceeding
is fully exemplified in the present case. If the plaintiff had
claimed the property under a donation, whether direct or dis-
guised, we would have answered, that since the year 1807,
Ramis, the alleged donor, had legitimate children born to
him: besides this, we have other grounds of defence, which
it is not necessary at present to advert to. It suffices to
prove, in order to entitle us to relief at the hands of this
court, that we have not been fairly dealt with; that sub-
stantial justice has not been done. One observation more,
before we quit this branch of the subject. We pray the
court to bear in mind that the appellee is the plaintiff in the
action, and that he relies on a particular title, *i. e.,* *a sale,*
which he sets forth in his petition at full length. We ask
again, can he be permitted, without amending his petition,
to shift his ground, and recover under a totally different
title? or, can the court do that for him, which he would
not be permitted to do himself? The case would be different
if the appellee was the defendant in the suit; for the defend-

ant in a petitory action need not plead or produce his title until his adversary has proved his, and then he is, perhaps, at liberty to show any title which he may have to the property. For this reason, we consider, with great deference to the court, that the decision in the case of *Holmes* vs. *Patterson,* 5 *Martin's Reports,* 693, is by no means conclusive on the subject, and cannot be invoked as supporting the judgment rendered in this cause. In that case the *donee, as he is considered,* was the *defendant;* and according to the well known rules governing petitory actions, he had a right to repel the claim of the plaintiff by the production of any title by which he might hold the property. But we apprehend the court would never have made the decision, if *Patterson had been the plaintiff,* and had claimed the slaves under a *sale.* This decision of the Supreme Court is also inapplicable to the case at bar for other reasons, which will be adduced in the subsequent part of this petition.

3. We have thus far argued on the assumption that the opinion of the court is correct in considering the act of 1807 as a donation ; but your honors will pardon us for controverting the correctness of that opinion. We believe the act of 1807 to be a mere nullity, both in form and substance ; and that, consequently, it can produce no legal effects whatever. As regards the form, it is destitute of one of the essential requisites to make it a contract of sale, that is, a *price,* for the mention of a price is as indispensable to the form of a contract of sale, as its reality is to the substance. For instance, if an individual says, " I sell my horse to Paul," without mentioning the price, such a contract would be void, for want of form : but, if A says to B, " I sell you my horse for one hundred dollars," and B accepts the proposition, the contract is perfect as to the *form;* yet it would be void as to its substance, if it was proved that the hundred dollars never were paid, and that the vendor never intended to exact the payment of it : in this case it would be a donation disguised under the form of an onerous contract. So, if a person sells a valuable estate for a dollar, the contract is valid as to the form, but is not so as respects the sub-

stance, because the price is not a serious one; and in that
case, too, it would be considered as a disguised donation.
The example last put is found in the Louisiana Code, article
2439, the last paragraph : ." It (the price) ought not to be
out of all proportion with the value of the thing; for in-
stance, the sale of a plantation for a dollar could not be
considered as a fair sale; it would be considered as donation
disguised." The contract in the case of *Holmes et al* vs. *Pat-
terson* was likewise valid as to its form. The court say,
" The bill of sale is made for value received. Neither the
amount nor the nature of what was given as the considera-
tion of the sale, is expressed or proved." No well founded
objection could be made to the form of this contract ; for it
is not necessary to express the amount of the price, or the
consideration in the act, even as the law now stands; it
suffices that a price has been agreed upon between the par-
ties, and that legal proof be made of this fact. The correct-
ness of this proposition clearly results from the provisions of
the 1894th article of the Louisiana Code, which is in the
following words :—" *If the cause expressed in the contract
should be one that does not exist, yet the contract cannot be inva-
lidated, if the party can show the existence of a true and sufficient
consideration.*" The Supreme Court, therefore, held, in the
case of *Holmes et al* vs. *Patterson*, that the contract was not a
sale, because the *value received* was not proved. The defect
was in the substance of the contract, not in its form. The
act under which the plaintiff in this cause claims the pro-
perty in controversy is null both in form and substance ; it
presents, in neither respect, the necessary ingredients of a
contract of sale, nor those of a donation. And if this be
true, the inevitable consequence follows, that it can produce
*no legal effect whatsoever; it is a mere nullity.* It cannot even
form the basis of prescription. Another consequence follows
with equal certainty, which is, that the plaintiff never had
any possession of the property ; that, on the contrary, the
legal possession has always been in the defendant, and those
under whom he claims. It is, therefore, a mistake to say
that the plaintiff has been in possession since 1807 ; for

neither party has had actual or real possession of the property. There is not a case similar to the present to be adduced in the whole range of the annals of jurisprudence; and most of the elementary writers have taken the principle for granted.

In all the cases, without a single exception, decided by the French tribunals, where irregular donations have been maintained, they were disguised in an onerous contract in due form; most of them contracts of sale, in all of which the price is stipulated, but was alleged and proved to be a simulation. There is but one of the French commentators with whose writings we are acquainted, who discusses the question; that is, *Guilhon Traité des Donations Entre-vifs*, vol. 1, p. 380. This author examines, with great ability and learning, the whole doctrine of disguised donations.—See Nos. 464, 5, 6, and also the entire chapter from page 373 to 461; *Merlin's Repertoire, verbo Simulation et Donation; Repertoire de la Nouvelle Jurisprudence, verbo Avantage Indirecte.** 

4. The Spanish law, under whose dominion this transaction took place, did not recognize disguised donations. When there was a great disparity between the price and the value of the thing sold, it was necessary, to make the contract valid under that system of jurisprudence, that the vendor should make a formal declaration in the act that he made a gratuitous donation of the difference between the price and the real value of the thing sold; and that this donation should be recorded.—See *Tapia-Febrero Novisimo*, vol. ii, p. 168, No. 50.

5. But let us, according to the suggestion of the court, substitute the words "*I give*," in the place of "*I sell*," and indulge in the supposition that the notary used the expunged expressions without a proper understanding of their legal import, (and we cannot refrain from observing, *en passant*, that this is, to say the least of it, carrying the power of interpretation to its utmost verge), can the act, in that form,

---

* In this work there is a decision of the Court of Cassation of the 17th August, 1817, which says, that the onerous contract in which the donation is disguised must be *perfect in its form.*  Vol. i, p. 268.

avail the plaintiff? It is true that, under the Spanish law, it is not necessary to mention in an act of donation the value of the thing given; but still it will be found that the act, thus metamorphosed, cannot stand the test of a legal examination under the Spanish law. By reference to *Tapia-Febrero Novisimo*, vol. ii, p. 492, in the chapter treating of donations *inter vivos*, No. 23, we find the requisites of a valid donation, under that system of law, enumerated; and, among other things, it is required, that whenever the value of the thing given exceeds five hundred *maravedis* of gold, it must be inscribed before the competent judge. So, it appears that, under the Spanish law, recording of donations exceeding a certain amount in value was just as necessary for their validity against third persons, as it is at present under the Civil Code. The defendant is an innocent purchaser, in good faith, and against him the *donee*, or those claiming under him, must prove that the donation was recorded. In the absence of this proof, the donation can have no effect against him.

*Rost, J.*, delivered the opinion of the court.

The counsel for the defendant makes a false application of the elementary principles to which they refer the court, and misconceive the grounds assumed in the decision, and the extent to which it goes.

The only question which the court considered themselves called upon to decide, was whether the plaintiffs had a title translative of property upon the face of it, and were in possession under that title; if they possessed and had title, the defendant had no right to inquire into its defects in this suit. The injunction must be perpetuated, and the defendant left to his legal remedy in a direct action. No principle is better settled in our jurisprudence, than that no relative nullities in titles, accompanied with possession, even those resulting from fraud, can be inquired into collaterally. Many of the cases in which it was so determined, are referred to in the decision, and others may be found in the reports. See *Weeks* vs. *Flower et al.*, 9 *Louisiana Reports*, 379.

EASTERN DIST.
April, 1839.

D'ORGENOY ET AL
vs.
DROZ.

No relative nullities in titles, accompanied by possession, not even those resulting from fraud, can be inquired into collaterally. It must be by direct action.

Naked possession for more than a year, creates the presumption of ownership in the possessor, sufficient to put the right owner upon proof of his title. He must make that proof as plaintiff in a direct action for that purpose, and is not permitted to throw the burden of proof on the possessor by alleging title when he is sued for a disturbance.

So, the person claiming to be the right owner, when sued for disturbance, cannot bring a petitory action until after judgment in the possessory one, and if he is condemned, not until he has satisfied the judgment.

The reason of those decisions is founded in the right which possessors have to institute a possessory action, when they are disturbed either in fact or in law, against whoever causes the disturbance. The title is only introduced to show the beginning and extent of the possession, and is not indispensable to the right of action. Naked possession for more than a year, creates a presumption of ownership in the possessor, sufficient to put the right owner upon proof of his title, and he must make that proof, as plaintiff, in a direct action instituted for that purpose; he is not permitted to throw the burden of the proof upon the possessor, by alleging title, when he is sued for a disturbance, and he cannot even bring a petitory action, till after judgment has been rendered in the possessory action; and if he has been condemned, not until he has satisfied the judgment given against him: *Code of Practice, article 55.* This is one of the reasons, if not one of the consequences of the maxim of law, *beati possidente.* It is in vain to say, then, that if the title of the plaintiffs had been called a donation, the defendant could have made a triumphant defence; since if the title was good on the face of it, as a donation, and possession had passed under it, the defendant was estopped and could make no defence at all. The error was that of the defendant, not that of the court: he should have known that after a possession of near thirty years, the plaintiffs were entitled to be heard before their land was sold from under them.

In the case of *Bissel and Wife* vs. *The Heirs of Erwin,* this court held valid as a sale, an act which the parties believed to be a lease; and the correctness of that decision never was doubted. To dismiss this action for the mistake of a name, would have been trifling with justice and the rights of the plaintiffs. The case of *Delogny* vs. *Smith,* was very different from the present; there the plaintiffs had expressly averred in their petition, that they claimed by inheritance from their mother, and by a donation from their father. Upon the trial, they attempted to establish a title by a transaction between their father and themselves. The defendant objected to the introduction of that evidence, and the court considering it as

contradicting the averments of the petition, sustained the
objection. In the present case, the plaintiffs have not two
different titles: that found in the record, is the only one
upon which they relied from the beginning; they have, it is
true, called it a sale, when it was a donation; but whatever
be its name, it was admitted in evidence without opposition
from the defendant. We found it in the record, and we acted
upon it as we were bound to do. If it came there improperly,
the defendant neglected the means of preventing it, and when
they say the decision of the court has taken them by surprise,
they forget that they argued the case at length, on the sup-
position that the title of the plaintiffs might be a donation,
and asked us repeatedly to remand the case if we should
come to that conclusion. The only thing of which they
seem not to have been aware, was, that if the plaintiff's title
was a donation, they must have recourse to a direct action to
avoid it. The distinction attempted to be drawn between
this case and that of *Holmes* vs. *Patterson*, will not stand the
test of examination. After the plaintiff in that case had
made out his title, the defendant was bound to make out his
also: he could not hold the property unless he did. He
claimed by virtue of a sale, and the court maintained him in
his possession under a donation. According to the position
assumed by the defendant's counsel, that judgment was
wrong. It should have been in favor of the plaintiffs,
reserving to the defendant his rights under a donation.

That the title of the plaintiff's ancestor was valid, as a
donation, under the laws of Spain, we cannot for a moment
doubt. It would be valid as such, even now. The authority
cited from *Voët*, appears to us conclusive, and no attempt
has been made to answer it. It is contended that the clauses
which *Febrero* mentions as usual in acts of donation, are not
all found in the deed of the plaintiffs. Let it be so, and what
results from it? Simply that the notary may have rendered
himself liable to censure, and not that the validity of the act
was in any manner affected by the omission. If the defend-
ant's counsel had read on a little further, they would have
found, also, the forms and clauses of style, in acts of sale.

This did not prevent verbal sales, or verbal donations, when tradition followed, from being valid. In donations, particularly, no form or clause was required, under pain of nullity; the consent of the parties; the thing given and the tradition, were sufficient.

French authorities lose much of their weight, when applied to the present case, because they refer to a system of laws under which donations and sales of real estate must be made in writing, and in a particular form, in order to produce any effect; and yet *Pothier*, the greatest of the French commentators, says, that even there, the sale of a valuable estate for a crown, is a donation, because a crown is not a price; and if a crown is not a price, there is necessarily no price at all; and then what becomes of the principle laid down by *Guilhon*, that a deed must be valid in law as a sale, before it can produce any effect as a donation. He has evidently adopted the doctrine of *Paul*, upon which *Voët* comments, without understanding it. Taking without any limitation the words of the author, that a sale without a price, is, as if it never had been made, *pro non facta est*, he has argued that if it is null and has never been made, it can produce no effect even as a donation, and has given us at great length, the benefit of his discovery. But *Voët* expressly tells us, that the text of the Roman laws and the commentary of Paul upon them, are not to be thus understood, and lays down the rule, that a sale without a price, or a fictitious sale, although null as a sale for want of one of the essential requisites of that contract, is valid as a donation, provided tradition follows.

We take the opinions of *Voët* and *Pothier*, in preference to that of *Guilhon*, and we are satisfied with the correctness of the decision. The rights which the defendant may have on account of the revocation of the donation, by the subsequent birth of children to the donor, are left open to him, subject to the Spanish laws, which provided that donations might, in such cases, be revoked or reduced when they included all, or the greater part of the estate of the donor.

The rehearing is refused.