EASTERN DIST.
February, 1840.

BURTON'S HEIRS
vs.
BURTON ET AL.

*Patterson,* for the defendant and appellant, suggested to the court that the record had not been filed by the appellant; and that he now offered to file it, (three judicial days since the return day having elapsed,) and prayed that the judgment be affirmed, with damages and costs.

---

### BURTON'S HEIRS *vs.* BURTON ET AL.

APPEAL FROM THE COURT OF PROBATES, FOR THE PARISH OF ST. HELENA.

Every donation or advantage is liable to be collated among co-heirs, unless expressly exempted by the donor.

So, in an action of partition among co-heirs, slaves which have been given, the donee is not permitted to collate them in kind, but according *to their value at the time of the donation.*

The donation of slaves imports an absolute transfer of property; and they are at the donee's risk, who is entitled to all the profits and increase, and must bear their deterioration and loss.

This is an action of partition, instituted by three of the children and forced heirs of Nancy and Jacob Burton, deceased, against three co-heirs and the representatives of a co-heir, Nathaniel Burton, deceased.

The plaintiffs allege, that the succession of their deceased ancestor is worth about ten thousand dollars, and has never been partitioned among the co-heirs. They pray for a final partition of said succession, according to law.

The representatives of Nathaniel Burton, by attorney, answered, and by way of intervention, alleged, that the other heirs had received large amounts of property in the life time of said Jacob and Nancy Burton, both in Georgia and this state, which they were bound to return to the succession, or collate it according to law. They further show that the succession of Jacob Burton was opened in the parish of St. Helena, and that John Burton was appointed administrator, who has illegally caused the property thereof to be sold. They further state their desire for a partition, and for this purpose require the administrator to settle his account; the heirs made to collate, and that a partition take place according to law.

They further state, that they are ignorant how much property has been received by the other heirs, but enumerate some and propound interrogatories to several of the heirs touching property "received from their common ancestor, and pray that it be inventoried as part of the succession."

After the heirs had answered, and all the property accounted for, the succession amounted to the gross sum of fifteen thousand six hundred and thirty-six dollars, and the debts unpaid and due, amounted to eight thousand three hundred and ninety-eight dollars, which, deducted, leaves a balance of seven thousand two hundred and thirty-eight dollars, to be divided among seven sets of heirs. Each heir collated, whether the property received from the ancestor in

BURTON'S HEIRS
vs.
BURTON ET AL.

his life time, was " given off" in Georgia, where he formerly resided, or in Louisiana, where his succession was opened.

The heirs collated what property they had received at its appraised value ; those of Nathaniel Burton, deceased, were allowed the price of hire of two slaves "given off" to him in Georgia, and taken back by said Jacob Burton fourteen years previously, and which was deducted from the gross amount of the succession before partition.    Upon this basis the partition proceeded.

Two of the heirs, plaintiffs, and the attorney for the absent heirs, opposed the homologation of the petition, alleging that a tract of land and some notes remained to be divided, and, therefore, the partition was only provisional.    They oppose the allowance of three thousand and thirty-four dollars to the heirs of N. Burton, for the hire of slaves loaned to, and taken back by the ancestor : Finally, that the partition is made on illegal principles, and that the shares of each are incorrect.

The heirs of N. Burton opposed the partition, on the ground that the heirs who had received slaves, did not return them and their increase to the mass of the succession, and because the hire or value of their services were not collated : Finally, because the value of the two slaves loaned or "given off" to N. Burton and taken back, were not allowed.

These oppositions were overruled, and from judgment homologating the partition, the opponents appealed.

*Andrews* and *Lawson*, for N. Burton's heirs contended,

1. That the judge of probates erred in not deciding that all the property of Jacob Burton, given off or loaned to his children and heirs, should be returned in kind with all the natural increase, whether said loans were made in the state of Georgia, or in Louisiana, inasmuch as no titles were given, and as the law recognizes no principle but equality as the basis of all partitions.

2. And further they contend, that, if the court below was right in considering the giving off, or loans of property, as absolute donations, then the court erred in not allowing to

the heirs of Nathaniel Burton the price of the two slaves,
which their grand-father had loaned to their father, and
afterwards took back and sold.

3. That the court below erred in not decreeing that all
heirs of Jacob Burton should account for the use of the pro-
perty loaned up to the time of making the partition, and in
such manner as to produce perfect equality at the time of
partition, among all the heirs.

*Bullard, J.,* delivered the opinion of the court.

This is an action of partition among the heirs of Jacob
Burton and his wife, and the only difficulty consists in adjust-
ing the collations among the heirs.

It is necessary to premise, that the deceased removed,
some years since, from Georgia, where they had "given off,"
as it is termed, to their children, as they settled in the world,
certain portions of property, such as slaves, small tracts of
land, or household furniture or stock; and that, after they
removed to Louisiana, the same thing had been done towards
other children.   The court below considered such advances
as donations subject to collation by taking less out of the
estate, and charged the co-heirs with the slaves thus receiv-
ed, according to their value, at the time of the advancement;
and, consequently, gave the increase or young of the slaves
to them respectively.   The representatives of Nathaniel
Burton, one of the sons of the deceased, who had received
two slaves in his life time, but which had been taken back
at his death, complain of this as producing great inequality
in the condition of the co-heirs, and have appealed to this
court.   Their counsel have relied on three points :

1st. That the court erred in not deciding that all the pro-
perty of Jacob Burton, the father, given off or loaned to his
children, should be returned in kind with its natural increase,
whether such loans were made in Georgia or in Louisiana,
inasmuch as no titles were given, and the law recognizes
equality among co-heirs as the basis of all partitions.

2d. That if the court was right in regarding the giving off
or loans, as absolute donations, then there was error in not

allowing to the heirs of Nathaniel Burton, the price of two slaves which had been loaned to their father, and afterwards taken back.

3d. That the court erred in not decreeing that the heirs should account for the use of the property loaned to them up to the time of the partition.

·I. The record does not show what is the law of Georgia, in relation to such advances to children ; whether they are regarded as absolute donations, not subject to be accounted for in the settlement of the estate of the donor ; or whether they be merely in the nature of loans. One witness testifies, that the custom was various on that subject ; that sometimes the parents gave to their children slaves as they married off, by way of gift, and sometimes as a loan. And if the young people got into a difficulty, or died, the old people claimed the property. In the absence of proof to the contrary, the law of Georgia must be taken to be consonant to ours, and, conse- quently, that every donation or advantage is liable to be col- lated, unless expressly exempted by the donor. If these advances were exempted as loans in the particular case before the court, there would be an end of the controversy, for the slaves would never have ceased to belong to the ancestor, and, consequently, would still belong to the estate, together with their increase. But the co-heirs to whom slaves were given, were interrogated on facts and articles touching those advances, and they answer, on oath, that they received the slaves as a gift. We must, therefore, consider the slaves as having been the object of a donation and subject to collation, according to the laws of Louisiana. "When slaves have been given, says the Code, the donee is not permitted to col- late them in kind. He is bound to collate for them by taking less, according to the value of the slaves at the time of the donation." *Article* 1361. The next article draws the necessary conclusion, to wit: that the donation imparts an absolute transfer, that the slaves are at the risk of the donee, and that he profits by their increase, as he would suffer by their deterioration or loss.

II. But the appellants complain that the heirs of Nathaniel

Every donation or advantage is liable to be col- lated among co- heirs, unless ex- pressly exempt- ed by the donor.

So, in an ac- tion of partition among co-heirs, slaves which have been given, the donee is not permitted to col- late them in kind, but ac- cording *to their value at the time of the donation.*

The donation of slaves imports an absolute trans- fer of property, and they are at the donee's risk, who is entitled to all the profits and increase, and must bear their deterioration and loss.

Burton ought to have been allowed the price of two slaves loaned to their father, and taken back. To this, it appears to us a satisfactory answer, to say, that they have been compelled to collate nothing on account of those two slaves, and that having been restored to the father before his death, we are to suppose they were either otherwise disposed of, or formed a part of his succession. In the latter event, they have, by this partition, received them in money, or, in other words, their share in the estate has not been diminished on account of those two slaves.

III. Lastly, the complaint of the heirs of Nathaniel Burton, that their co-heirs were not decreed to account for the use of the slaves loaned to them, up to the time of the partition, appears to us unfounded. The slaves were at the risk of the children to whom they were given. If they had died the day after the donation, they would, nevertheless, have been compelled to collate their estimated value. It would, therefore, be manifestly unjust that they should be decreed to pay hire for them. Indeed, as soon as it is settled that there was no loan, but a donation, there is no longer any question about the hire, for the donee became liable to collate only value of the slaves.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.