Cox v. Brashear.

---

## NATHANIEL COX *v.* WALTER BRASHEAR.

APPEAL from the District Court of St. Mary, *King,* J. The plaintiff claimed $4013 64, with interest at five per cent from the 10th August, 1832. There was a judgment in his favor for the amount, with interest from the 21st of June, 1833, from which the defendant has appealed.

GARLAND, J. This suit is brought on two bonds, which the defendant signed as the surety of Robert Brashear, curator of the vacant estate of William S. Barr, deceased. The plaintiff alleges that the curator has not administered the estate according to law; that he has squandered the funds; that he has not paid the debts; that he is insolvent; and has rendered no account. Barr died about the month of February or March, 1832. The curator was appointed soon after. On the 24th of May, 1833, he presented to the Probate Judge, a list of debts due by the succession, with the amount of funds on hand to be distributed among the creditors at that time; and also his account. At the head of the list of creditors, Nathaniel Cox is placed for the sum of $4519 72. The curator prayed that the list or statement of debts, and his *pro rata* dis-

tribution and account might be homologated, and that he might be continued in office another year, as the estate was not yet settled. A judgment of homologation was rendered after the proper notices, and an opposition made by one of the creditors; the *pro rata* share of Cox was fixed, and nearly the whole amount of it paid to him. The curator was continued in office for another year, but the defendant was not his surety on the bond given for the second year. On the 22d May, 1834, the curator presented to the Probate Court a second list of creditors, including all on the previous list who had not been paid, except Cox, with one or two new creditors. He also presented a *pro rata* distribution of the funds then on hand, and asked again to be continued in his curatorship. At the foot of the list of creditors, the curator adds : " Cox' claim is left out of this tableau, it being intended to dispute it, a sufficient fund being retained to pay him in the same proportion as the other creditors, if his claim be finally allowed." He also states that the estate was solvent. He prayed that he might be permitted to pay the creditors *pro rata* as stated, and that he might be continued another year in the administration. On the 16th of June, 1834, this account was homologated, and the curator continued in his functions for another year. He gave a new bond, shortly after this re-appointment, with the defendant as surety, since which time he has rendered no account of his administration, and is proved to have become insolvent. It is not shown that Cox had any notice of the filing of this second tableau or list of debts, further than the statement in the judgment that the usual publication had been made.

The inventory and sales show, that Barr's estate was represented to be worth upwards of $22,000. The debts are shown to have been about $15,000, including Cox'. At the time of filing the second tableau or list, the curator represents the whole amount of debts, exclusive of that in controversy, as $7288 36, and states that he has on hand applicable to the payment of them $4092 75, after retaining a sufficient amount to pay Cox his *pro rata* dividend, if entitled to it. It appears by an inventory that $6490 64 of accounts, notes, &c. have been delivered to a subsequent curator.

This suit is brought on the first and third bonds given by the

curator, and the plaintiff alleges that he is entitled to recover, as his claim has been liquidated by the curator, placed on the list of debtors, and regularly recognized and approved by the Court of Probates in a legal manner, which judgment has been in part executed by the party, and has now the effect of *res judicata*. He avers that the curator had no right to annul the approval and recognition of his debt by the Court of Probates without notice, and a regular action to set aside what had been done by it ; and further alleges that the defendant is bound by the judgment, and cannot contest its validity or amount.

The defendant contends, that he is not bound by the judgment or order of the Court of Probates ; that he was neither party nor privy to the proceedings. He further says that the judgment was obtained through error or fraud, and is, or ought to be as to him, a nullity.

The case has been argued upon all these points, and many authorities have been cited to sustain these positions, and others settled in the case of *Parmele and Baker* v. *Brashear*, 16 La. 72.

A careful examination of the facts, relieves us from the necessity of examining these questions. For if we allow the defendant the benefit of all his positions, the plaintiff would still be entitled to recover. The number of accounts in the record, and the mingling, in some instances, of the individual affairs of the defendant, with those of the succession of Barr, have produced some confusion. It appears that, in August, 1831, Barr wanted to raise some money ; and that the defendant made a note payable to Cox, and lent it to Barr, which note fell due in April, 1832. This note Cox held at the time of Barr's death in March, 1832. Barr and Cox were engaged in business together, the latter being a factor in New Orleans, and the former a merchant in the country. On the 31st of August, 1831, an account current was stated, in which the note is not included, showing a balance of $12,590 01 in favor of Cox. . Various transactions took place between the parties between that time and Barr's death, which changed the state of the accounts ; and at that period Cox had in his hands $1901 57 ; but the note of $2500 was to be paid ; and at the same time there were various acceptances of Cox for Barr outstanding, amounting to about $2400, drawn previous to Barr's death, which fell due

Cox v. Brashear.

about six months after, which Cox had not then paid. This accounts for the expression in his letter to Birdsall, written soon after Barr's death, that he was then in debt to Barr, if the note of $2500 were provided for. The note of $2500 was not paid by the defendant at maturity, but renewed at four months; and when the new note fell due, it was renewed on the 17th of December, 1832, at four months. It does not appear that this note was ever paid by the defendant; and we find a receipt in the record, in which the curator acknowledges that he has received that note, and another of the same person for $1700, dated December 20, 1832, for which he is to account as curator. These two notes are represented in all the accounts as the debts of Barr. He is charged with them when given, and when they fall due and are renewed is credited with the amount of the old note. There is no evidence that the notes mentioned in the receipt have been paid. Their being in the possession of the curator is accounted for by his receipt.

The account rendered on the 10th of May, 1832, shows in what way the sum then claimed was due. It was accepted and approved, and the evidence shows that the amount was due. It is too late now to dispute the charges of interest. The accounts in the record show that there have been various transactions since the death of Barr; and we find in the record an account rendered by the executor of Cox, in which it appears that the balance due on the 21st of March, 1837, was $2279 97, for which sum the defendant is responsible, with five per cent interest from that date.

The judgment of the District Court is, therefore, annulled; and this court, proceeding to give such judgment as in its opinion ought to have been given in the court below, orders that the plaintiff recover against the defendant, the sum of two thousand two hundred and seventy-nine dollars and ninety-seven cents, with interest thereon, at the rate of five per centum per annum, from the 21st day of March, 1837, until paid, with the costs in the District Court; those of the appeal to be paid by the plaintiff.

*Plaisted,* for the plaintiff.

*Dwight,* for the appellant.