## URQUHART et al. *v.* SARGENT.

The adoption in art. 227, of tit. 2, book 3, of the Civil Code of 1808, of the general principle of the spanish law, that property acquired by one spouse from the other by donation before or after marriage or otherwise, or through the succession of a child, shall, in case of a second marriage by the surviving spouse, belong to the children of the first marriage, did not repeal the exceptions to that principle existing under the spanish laws. The principle must be considered to have been adopted here, subject to the limitations and modifications which belonged to it in Spain.

A testatrix living in Pennsylvania, having two children by her first husband, and one by a second, conveyed "in consideration of natural affection and of the sum of five dollars," to the last child, by deed, all her right and interest in certain lands represented by her as having belonged to her last husband. By her will, made several years after, she bequeathed all the residue of her estate, in equal portions, to her three children: *Held*, that though the sale be considered as a donation, the lands so conveyed would not be subject to collation, the terms of the conveyance showing unequivocally that it was the intention of the donor that the property should inure as an advantage to her son.

APPEAL from the District Court of Concordia, *Curry*, J. This action was instituted by *Mary Urquhart*, the only surviving child of *Mary Sargent*, by her first husband *David Williams*, and by the children of *James C. Williams*, her brother. The ancestor of the plaintiffs, *David Williams*, died in 1792, leaving four children. *Mary*, one of the plaintiffs, and *James C.*, *David, and Anna Williams*. His widow was married, in 1793, to *Winthrop Sargent*, who died in 1822, leaving two sons, *George W. Sargent*, the defendant, and another son, who died in 1823, intestate, unmarried, and without issue. *David Williams*, the son, also died intestate, unmarried, and without issue. *Anna Williams* was married to one *Thompson*, by whom she had three

children; but *Thompson* and his wife died in 1823, and their three children a few days after them. The plaintiffs allege that the estate left by *Thompson's* children was inherited equally by their paternal and maternal ascendants, and that *Mary Sargent*, the only surviving ascendant on the maternal side, was only entitled to the usufruct of one moiety of the estate, her second marriage having deprived her of the absolute title, which vested in the petitioners, descendants of her first marriage. They aver that the successions of *Thompson* and his wife consisted, in part, of certain lands, for which the defendant, as heir of *Mary Sargent*, has brought suit, claiming them as his property; and they pray that he may be compelled to desist from setting up title thereto, and for damages. They allege that *Winthrop Sargent*, acquired, by purchase, two tracts of land in this State ; that there was no administration on his succession here; that after his death, his widow, *Mary Sargent*, by a deed of sale conveyed to the defendant all her interest in the two tracts for the sum of five dollars, and for the maternal love and affection which she bore to him; that this sale was intended as a donation, and must be so considered; and they pray that the defendant may be required to collate the property, or to surrender it for division according to law. They aver that *Mary Sargent* was entitled to one half of these tracts of land as being community property, and that, on the death of defendant's brother in 1823, *Mary Sargent* became entitled to his half of the other half of the property.

The defendant prayed that the plaintiff's demand might be rejected, claiming to be the owner of the two tracts of land acquired by his father by purchase,* and of one undivided third of all the property of every description belonging to the succession of *Mary Sargent*, his mother.

The deed from *Mary Sargent* to the defendant, and her will, were offered in evidence. It was admitted that the english common law formed part of the law of Pennsylvania; that *Mary Sargent*, and her second husband, *Winthrop Sargent*, never resided in Pennsylvania; that one of the tracts of land conveyed by *Mary Sargent* to the defendant was a donation to *Winthrop Sargent* from the spanish government, and that the other tract was acquired by *Winthrop Sargent*, by purchase, during marriage; and that the property forming the successions of *Thompson* and his wife, was acquired by them by purchase, during their marriage. The deed to the defendant was executed by *Mary Sarent*, in 1840; and she died in 1843. The court below ordered the defendant to collate the two tracts of land conveyed to him by his mother; and from this judgment he has appealed.

*Frost* and *Prentiss*, for the plaintiffs. *Mary Sargent* having contracted a second marriage, inherited only the usufruct of the *Thompson* property. Code of 1808, p. 258. It will be urged that there was by the spanish law, an exception to the general rule, restricting the wife's rights to the usufruct, in cases where the property was acquired by the labor of the child, as was the case with the property left by the *Thompsons*.

The question is whether that exception was abolished by the statute adopting the Code of 1808, or whether it remained in full force until the repealing act of 1828? In support of its existence there are three decisions. 6 Mart. N S. 31. 7 Ibid. 666. 15 La. 112.

It is a settled rule that, when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. 1 Pick. 45. 12 Mass. 544.

URQUHART
*v.*
SARGENT.

---

*An error, in the answer, as to the interest of the defendant in these tracts, was corrected, apparently by consent.

URQUHART
v.
SARGENT

6 Dana, 589–90.　9 Pick. 97.　11 Mart. 149.　12 Mass. 537, 545.　10 Pick. 39.
5 Pick. 109.

The preamble of a statute is the key to its construction. The preamble sets forth the necessity for "collecting in a single work the laws in force, which might serve as a guide for the decision of the courts and juries, without recurring to a multiplicity of books, which being for the most part written in foreign languages offer in their interpretation inexhaustible sources of litigation." This of itself shows that the legislature meant this single work to be the guide for courts and juries.

"Such a construction ought to be put upon a statute as may best answer the intention which the makers had in view. And this intention is sometimes to be collected from the cause or necessity of making the statute, and sometimes from other circumstances." 15 Johns. 381.

The second section is in these words, "whatever in the ancient civil laws of this territory, or the territorial statutes, is contrary to the dispositions contained in said digest, or irreconcilable with them, is hereby abrogated." Now an exception is certainly something contrary to, and irreconcilable with, the general rule.

The principle of *stare decisis*, will be invoked. We reply, "it is obvious that when the intention of the legislature is clearly to the contrary, no current of decisions can or ought to counteract that intention." 3 Chitty's Pract. 55. 1 Black. 69, 70, 77. 1 Chitty's Rep. 299.

The deed to the defendant is both by the civil and common law a deed of gift. The burden of proof is on the vendee, to prove a valuable consideration. No such evidence has been introduced, and under article 1326 the son is bound to collate.

*Stockton* and *Steele*, for the defendant. 1st. No court of Louisiana can entertain a demand for collation on the part of the plaintiffs, because such claim, being a merely *personal demand*, like all other personal or moveable property, is to be governed by the laws of the domicil of the deceased, to wit, the laws of Pennsylvania, where the succession is administered; and it can be prosecuted only before the court in Pennsylvania having jurisdiction of the distribution of the estate.

2d. Collation can be asked only on a *final distribution* of the estate: it is never competent for the parties claiming collation to institute a petitory action for the thing on account of which collation is claimed to be due; and consequently, if there is no distribution about to be made, on which to found the claim for collation, then there is no foundation on which to base a judgment.

3d. If the court shall be of opinion that a case is shown requiring any other judgment than one of dismissal for want of jurisdiction, we hold that the judgment, in so far as it orders the defendant to collate, is erroneous, and ought to be reversed, and, in all other particulars, confirmed; because the act of *Mary Sargent* making a will in Pennsylvania, which was her domicil, is in fact an express declaration, on her part, that the donation of the lands in Louisiana, made in her lifetime to the defendant, was intended as *an advancement* to him, over and above what she bequeathed to the other heirs, and therefore, no *collation* is due; and we hold there was no forfeiture, on the part of *Mary Sargent*, of her fee simple right in the lands descended to her from her grand-children, because the said lands were acquired by *Mrs. Anna Williams*, wife of *Jonathan Thompson*, by purchase, &c.

*First.* As to the first point—*the objection to the jurisdiction.* To sustain this position, it is, perhaps, only necessary to establish, that the claim of collation, set up by the plaintiffs, is simply *a personal demand*, or demand of money. The law of Louisiana is conclusive on this subject; for it makes the thing which has been given, and on account of which collation is claimed, to be the property absolutely of the donee, to whom it tenders, however, the option, in case collation is due, of surrendering the thing, or of keeping it, and taking less in the distribution of the estate; and in case he exercises no choice, then it treats the property as belonging to the donee. See C. C. 1254, 1255, 1256. If the donee elects to collate in kind, from the moment of his election, the thing belongs to the succession, and is no longer at his risk. See Civil Code, 1339. This election to collate in kind is equivalent to a sale or conveyance made by the donee to the succession: he may sell it, or burden it with mortgages; or it may be taken in execution for his debts, &c. See C. C., 1348, 1349. This thing, therefore, forms no part of the succession which is to be divided: it is

the property of the donee, the *value* of which he may, perhaps, owe to the succession of the donor; and if so, it is an incorporeal right—a debt—personal property belonging to said succession, to be governed, disposed of, and distributed according to the laws of the *domicil of the donor*, at the time of his death. See Story's Conflict of Laws, § 481.

*Second.* But even if the domicil of the testatrix was in Louisiana, the succession there opened, and the claim for collation well founded, still *there must be a suit for partition on which to found it*; because, collation is but an *incident* to a suit for partition. The present suit is, in fact, a petitory action, in which no valid judgment can be rendered, except one of dismissal. By reference to art. 1258 of the Louisiana Code it will be perceived that it is there expressly stated, that the claim for collation is but *an incident to a suit for partition.*

*Third.* There is sufficient evidence of the intention of the donor, that the lands in Louisiana were given to the defendant, as an advancement over and above what is given to the other heirs.

By articles 1309, 1310, 1311 of the Civil Code, the heir who has received from the ancestor a donation or legacy, is not bound to collate what he has so received, if the ancestor has sufficiently expressed that it was intended by him, as *an advancement over and above what is given to the other heirs.*

There is an apparent contrariety in these three articles of the Code, as to the evidence to be furnished by the heir who desires to excuse himself from the obligation of collating. Art. 1309 says, "the donee shall not be bound to collate; if the donor has *formally expressed his will*, that what he thus gave was an advantage or extra part," &c. Article 1310 allows proof to be made of this expression of will, by a *public act* made subsequent to the donation, &c. And lastly, art. 1311 says, " the declaration that the gift or legacy is intended as an advantage or extra portion, may be made *in other equivalent terms*, provided they indicate, in an unequivocal manner, that such was the will of the donor." There is a like contrariety between arts. 221 and 227 of the Code, which have reference to the acknowledgment of illegitimate children; the first requiring that it *shall be made by public act*, and the latter admitting other means of evidence as equivalent and sufficient. In a late case, *Compton's Heirs* v. *Prescott et al.*, 12 Rob. 56, arts. 221 and 227 are reconciled and construed, and other evidence than that by *a public act* is deemed sufficient. We therefore suppose, that the intention of the donor that the donation should be *an extra portion*, may be established by any reasonable evidence.

The common law of England is proved to be the law of Pennsylvania, according to which, the claim for collation could take place only in case lands had been given by way of *advancement in marriage*, and afterwards, other lands descended *in fee simple*, from the same ancestor, to the donee and her sisters. It was necessary, in order to warrant the claim for bringing the lands so donated into hotchpotch, that the other lands should have descended in *fee simple ; a* descent of lands in fee tail would not support the claim, as an estate tail can be created only by the *express direction of the donor.* See 2 Blackstone's Com. 190, 191. The *particular customs* of London and Yorkshire are much the same as to personal property : such is, also, the law of Scotland. See Black.'s Com. 517. There was no proof in this case, that the statute law of Pennsylvania has altered the common law ; but we are aware that such is the fact, and that, by the statute law of Pennsylvania, collation is due by the heir who has received *any donation* from the ancestor in his lifetime, provided the ancestor dies intestate, and not otherwise. It appears, then, that both the common law and the statute law of Pennsylvania demand, that the donation shall be brought into hotchpotch (or shall be collated), unless the ancestor shall have expressed his intention to be otherwise. *The making a will, or the creation of an estate tail*, is, however, evidence that the ancestor intended the donation as an advancement to the donee, over and above what is given to the other heirs. The common law, and the statute law of Pennsylvania, in reference to this subject, are both founded (as is the Louisiana law) on *the supposed desire of the ancestor, in the absence of evidence to the contrary, that his heirs shall share equally all his property.* Now, any evidence which shall destroy this *presumption*, is sufficient to defeat the claim for collation. This is effectually done in Pennsylvania, by *making a will.* This was done by *Mary Sargent*, who, at the date of making her will, and at the date of her death, resided in Pennsylvania. She must be presumed in making her will in the place of her domicil, to have had reference to the laws of Pennsylvania, according to which the act of making a will is an express de-

claration that, she gave the defendant the lands in Louisiana, as an advantage and extra portion, over and above what was given to the other heirs. *Mary Sargent* never, at any time, resided in Louisiana; had she resided in Louisiana at the date of her death, a more explicit declaration of intention, than the mere act of making a will, would have been necessary to excuse the defendant from collation, because she would then have been held to have acted with reference to the laws of Louisiana. The case is very different where she acted with reference to the laws of Pennsylvania, which require no other act than the mere making of the will to evidence her intention, that the donation of the lands should be an advancement over the other heirs.

The question is, whether it is to be believed that *Mary Sargeant*, in making a deed of gift to the defendant, in 1840, of the lands in Louisiana, and afterwards, in 1843, making a will in Pennsylvania, by which she devises all her estate equally to be divided among her own heirs, has not thereby sufficiently expressed her will and intention that said gift should be an extra portion, &c.? The strict rules of law as to the formalities of executing a will, are rigidly adhered to; but when established, the law is liberal in so construing the contents of the instrument, as to carry out the intention of the testator. Therefore, where the intention of the testator is manifest, to dispose of property, although he entirely misdescribes it—calls it *personal*, when he intends *real* property, &c., yet effect shall be given to his real intention. See the case of *Doe ex dem. Tofield* v. *Tofield*, 11 East's Rep. 246, mentioned in Roberts on Wills, 387, Exeter, N. H., edit. See also Roberts on Wills, 413. Ibid. 465.

The testatrix in this case had resided most of her life in Pennsylvania. She may reasonably be supposed to have been well advised by the best counsel, as to the requirements of the laws of Pennsylvania, in order to make a valid will; and we may fairly conclude, without any presumption of law to that effect, that she well understood that if she did not make a will, and died intestate, the gift of lands in Louisiana to the defendant, would not avail him anything. It is fairly presumable that *she made the will to prevent this contravention of her wishes and intentions*. But the law presumes, that she knew the law of Pennsylvania, and that she acted in reference to it; that she intended by her will, what that law intends, to wit, that the donation of the lands in Louisiana should be an extra portion to the defendant.

The case of *Anstruther* v. *Chalmers*, mentioned in Story's Conflict of Laws, § 491, reported in 2 Simons' Reports, 1, and 3 Hagg. Ecc. Rep. 444, is perfectly to our purpose. The court there laid down the rule. "that in the construction of a will, *the lex domicilii must govern*, unless there is sufficient on its face to show a different intention in the testator;" "that, being domiciled in England, it was presumed that the testatrix intended the law of England to be applied; and that there was not enough in the will to repel that presumption." The will of *Mary Sargent* must, then, be construed by the *lex domicilii*, by the laws of Pennsylvania, which make *the will itself* to be a declaration of the donor that the gift was intended as an extra portion. See the case of *Gordon* v. *Brown*, Story C. Laws, § 490.

*Fourth.* The case must be governed entirely by the laws of Pennsylvania; and by the laws of that State, collation cannot be lawfully demanded from the defendant before any tribunal whatever. Story says, in his work on the Conflict of Laws, § 481: "The universal principle now recognized by the common law, though it was formerly much contested, is, that the succession to personal property is governed exclusively by the law of the actual domicil of the intestate, at the time of his death;" and again, in the same paragraph and page, he says, "and this doctrine is maintained with equal broadness by the generality of foreign jurists." In the case of *Balfour* v. *Scott*, the facts were these: "A person domiciled in England died intestate, leaving real estate in Scotland. The heir was one of the next of kin, and claimed a share of the personal estate. To this claim it was objected that, by the law of Scotland, *the heir cannot share in the personal property with the other next of kin, except on condition of collating the real estate;* that is, bringing it into a mass with the personal estate, to form one common subject of division, It was determined, however, that he was entitled to take his share without complying with that obligation. There the English law decided the question." See Story's Conflict of Laws, § 486.

A claim for collation, according to the laws of Pennsylvania, can be effectually made only in case of intestacy; and according to the laws of Louisiana, only

in case of actual or *quasi* intestacy : consequently, the above authority is directly in point, to show, that the distribution of the estate of *Mary Surgent* must be made in Pennsylvania, and according to the laws of that State, which was the place of her domicil.   To succeed under the laws of Pennsylvania, the plaintiffs are bound to show that *Mary Sargent* died *intestate*.   We have established that there was a valid and legal *will*; that the *land* given to defendant did not in any manner *belong to Mary Sargent* at the time of her death; and any claim which plaintiffs might pretend to set up against defendant in consequence of such gift, is only a *personal demand*, is only *personal property*, and must be governed by the laws of Pennsylvania.

As to the forfeiture of the lands descended to the testatrix from the children of *Anna Williams*, her daughter : it is admitted that these lands were acquired by purchase, by *Anna Williams*; and so, under the decision in 15 La. 112, it is clear that no forfeiture has taken place under article 1746 of the Louisiana Code.

The judgment of the court was pronounced by

EUSTIS, C. J.   *Winthrop Sargent* married the widow of *David Williams*. The plaintiffs are *Mrs. Urquhart*, issue of the first marriage, and the children of *James C. Williams*, her brother.   *George W. Sargent*, the defendant, is the only surviving issue of the second marriage.   The late *Mrs. Sargent*, as surviving ascendant in the maternal line, took half the succession of her three grand children, the minor children of the late *Jonathan Thompson*, in 1823.   It is contended by the plaintiffs that she was only entitled to the usufruct, in consequence of her second marriage subsequent to the death of the father of *Mrs. Thompson*, the mother of the minors.

This is a question which has been very fully discussed, and decided several times by the Supreme Court, under the jurisprudence which prevailed before the repeal of the laws of Spain.   The court always held that, the article in the Code cited in argument, did not repeal the exceptions which still existed limiting its operations.   *Verret* and *others* v. *Theriot*, 15 La. 112.   *Le Blanc* v. *Landry*, 7 Mart. N. S. 668.   *Duncan's Executors* v. *Hampton*, 6 Mart. N. S. 32.

*Winthrop Sargent*, the husband by second marriage of *Mrs. Sargent*, died possessed of two tracts of land on lake St. John, in the parish of Concordia, In 1840, *Mrs. Sargent* conveyed to her son, the defendant, all her right, title and interest in said lands, in consideration of the *natural affection which she bore him, and also of the sum of five dollars to her in hand paid*.   By her will, made in March, 1843, after some legacies, the testatrix gives all the rest, residue and remainder of her estate, real and personal, whatsoever and wheresoever, one third part to her children, *Mrs. Urquhart*, and the defendant *Geo. W. Sargent*, and to the children of her deceased son, *James C. Williams*.

The intention of the testatrix that the undisposed of portion of her estate should be equally divided among her children and their descendants, in equal shares, as directed, is evident ; but the form of a sale, in which the conveyance of these tracts of land is made, we think shows the intention that something beside a donation, subject to collation, was intended by that act.   Both the conveyance and the will were made in Philadelphia.   The petition charges that " said sale was intended as a donation, and is to be considered as such."   If it was, the manifestation of will on the part of the donor that it should inure as an advantage to her son, we think unequivocally results from its terms.   She considered that these lands might of right be given to the defendant, without doing injustice to her other heirs ; and of this we have evidence in this recital of the conveyance :   "Being the same tracts formerly belonging to *Winthrop Sargent*

URQUHART
*v.*
SARGENT.

and *John Steele*, and which, by conveyance of his share by said *John Steele* to said *Winthrop Sargent*, became wholly vested in said *Winthrop Sargent, in fee simple.*" One of the tracts, called the *Winthrop Sargent* tract, was granted to the father of the defendant by the spanish government, and formed no part of the community existing between him and his wife. *Heirs of Rouquier* v. *His Executors*, 5 Mart. N. S. 99. *Frique* v. *Hopkins*, 4 Mart. N. S. 212. *Gayoso de Lemos* v. *Garcia*, 1 Mart. N. S. 324.

The donor appeared to consider them as of right the patrimony of the only son of her last husband, and we think made the conveyance in the furtherance of that idea, to the exclusion of the relatives of the half blood. This view is fortified by the fact that the donor was a resident of, and domiciliated in, Pennsylvania, where both instruments were made, by the laws of which collation cannot be exacted, as under the laws of Louisiana. *Harrison* v. *Nixon*, 9 Peters, 503. Story, Conflict of Laws, § 491. *Gordon* v. *Brown*, 3 Haggard Ecc. Rep. pp. 455, 444, *et seq.*

The judgment appealed from is therefore reversed, and judgment is rendered for the defendant, with costs in both courts.*

---

*\*Prentiss*, for a rehearing. The plaintiffs ask for a rehearing of so much of this cause as relates to defendant's liability to collate with them, such portion of the two tracts of land as he received by donation from his mother during her life time

  The court erred in deciding that the donation to defendant, by his mother, is not subject to collation.

  I. The deed from *Mary Sargent* to *G. W. Sargent*, is to be governed entirely by the laws of Louisiana, both as to its construction and effect. Nor does the fact of its having been executed in Philadelphia, alter the matter ; it has precisely the effect it would have if executed in Louisiana, and no more. Story lays down the doctrine in his Conflict of Laws, ss. 424, 427, 428, 435, as being recognized by the common law, and also by all the foreign jurists, " that the laws of the place where real property is situated, exclusively govern in respect to the rights of parties, *the modes of transfer, and the solemnities which should accompany them.*" Art. 10, Civil Code, says : " The effect of acts passed in one country to have effect in another country, is regulated by the laws of the country, where they are to have effect." At all events, this rule is universal in regard to lands. It is the law of Pennsylvania, as well as all the common law States. The legal presumption is that, *Mary Sargent* knew that her deed to lands in Louisiana, would be governed in its effects, by the laws of Louisiana. The fact that the deed, as well as the will, " were made in Philadelphia," so far as the disposition of lands in Louisiana is concerned, does not change the legal construction of either instrument.

  II. The conveyance of these tracts of land, notwithstanding its apparent form of a sale, is upon its face a pure *donation inter vivos*. It is not a sale even in form ; it wants one of the essential requisites of a sale, to wit, a price. The nominal price of five dollars is no price. Vide Pothier, " Traité du Contrat de Vente," nos. 16, 17, 18. " A price that bears no proportion to the value of the things sold, is not a true price ; for instance, if one sells a large tract of land for one crown, for the price being the estimate made by the contracting parties of the value of the thing, an estimate which bears no proportion to its value cannot be considered a serious one, nor consequently a real price. *Such a contract is not a sale, but a donation*, falsely termed a sale, *which must be subject to all the formalities of a donation.* Pothier "Traité du Contrat de Vente," nos. 19, 20. This doctrine of Pothier is recognized and relied upon by Judge Rost, in the case of *D'Orgenoy et al.* v. *Droz*, 13 La. 389–398. Also in *Holmes* v. *Patterson*, 5 Mart. 693. The rule is expressly adopted by our Code. Art. 2439 provides that the price " ought not to be out of all proportion to the value of the thing ; for instance, the sale of a plantation for a dollar, could not be considered as a fair sale ; it would be considered, *as a donation disguised.*" The same is the rule of the common law. Vide 2 Kent's Com. 477. In the present case, the conveyance is of sixteen hundred arpents of valuable land. The consideration is " natural affection and five dollars." Now, this five dollars is no real price, nor does this conveyance constitute a real sale, either according to the civil or common law. At common law, it is the usual, almost the universal mode, of making gifts, or pure donations *inter vivos*.

  It is never presumed that the nominal consideration is actually paid ; and nine out of ten of all the pure donations ever made, at common law, have been clothed in the form of the present conveyance, and no common law lawyer ever dreamed of considering such a conveyance as any thing but a pure and simple donation. The court suggests in its opinion, " that something besides a donation, subject to collation, was intended," &c. This conclusion we think wholly unwarranted both in law and fact. But we will consider this point by itself

III. We have attempted to show that the conveyance from *Mary Sargent* to *G. W.* *Sargent*, was not a sale, but a pure *donation inter vivos*, and is to be governed in its operation and effect by the laws of Louisiana, where the lands lie, and not by the laws of Pennsylvania, where the deed was executed. Now, is this donation subject to collation by the laws of Louisiana? Let us refer to the rules laid down in the Code on this subject. Art. 1306, of the Civil Code, provides "that children or grand children coming to the succession of their fathers or mothers, or other ascendants, *must collate* what they have received from them by donation *inter vivos*, *directly or indirectly*, unless the donations and legacies have been made to them *expressly* as an advantage over their co-heirs, and besides their portion." The same article prescribes that "this rule takes place, whether the children, &c., succeed to their ascendants, as legal or as *testamentary heirs*," *&c.* This conveyance is to be construed then precisely as if *Mrs. Sargent* had died intestate, unless there is something in the will affecting it. Art. 1307 lays down the foundation of "the obligation of collating," to wit: "the equality which must be naturally observed between children and other lawful descendants, who divide among them the succession of their father, mother, &c." Art. 1308, says: "Collation must take place whether the donor has ordered it, or has remained silent on the subject; *for collation is always presumed where it has not been expressly forbidden*," Art. 1309 provides that collation shall not take place, "if the donor has *formally expressed his will*, that what he thus gave was an advantage or extra part, unless the value of the object exceed the disposable portion, &c. Art. 1310 provides that, "the declaration that the gift is made as an advantage or extra portion, may be made not only in the instrument where such disposition is contained, but even afterwards by an act passed before a notary and two witnesses." Art. 1311 says:" The declaration that the gift or legacy is intended as an advantage, or extra portion, may be made *in other equivalent terms, provided* they indicate, *in an unequivocal manner*, that such was the will of the donor."

The last four articles show conclusively, that gifts or donations *inter vivos* are subject to collation, unless the donor has *expressly declared* the contrary, either in the act of donation, or some subsequent instrument; and this declaration must be in terms indicating in *an unequivocal manner*, such an intention on the part of the donor. Now there cannot be found in the conveyance from *Mrs. Sargent*, nor in her will, any express declaration that this donation was intended as an advantage, or extra portion; nor can there be found, according to art. 1311, any declaration made *in other equivalent terms*, indicating in *an unequivocal manner*, that such was the will of the donor.

What are the expressions in this conveyance, equivalent to an express declaration, indicating unequivocally the donor's intention, that this donation should be held as an extra portion, &c. Let us examine those upon which the court rely as the basis of their judgment. The court says: "But the form of a sale in which the conveyance of these tracts of land is made, we think shows an intention that something besides a donation subject to collation, was intended by that act." Now we have attempted to show that, both by the civil and the common law, this *form of sale*, with a mere nominal price, does not alter its character and effect, as a donation; but even as a donation disguised in a sale, it is subject to collation equally with a pure donation. In the case of *Bossier* v. *Vienne*, 12 Mart. 421, the court decided that, "when the father sells to the son at a very low price, the advantage thus conferred is subject to collation. In *Benton's heirs* v. *Benton et al.*, 14 La. 352, it was held "that every donation, or *advantage* given to heirs is liable to collation, *unless expressly excepted by the donor*." This, too, was a case in which the donation had been made in Georgia. But the rule is expressly laid down in the Code, art. 1326, which is as follows: "The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus when a father *has sold a thing to his son at a very low price*, or has paid for him the price of some purchase, or has spent money to improve his son's estate, all that is subject to collation." Under this article, how can it be urged that the form of a sale, with a mere nominal consideration, indicates an intention that the property so conveyed shall not be subject to collation? Such a deduction is at war with both the Code and the adjudicated cases.

But the court proceeds: "The manifestation of will on the part of the donor, that it should inure as an advantage to her son, we think unequivocally results from its terms. She considered that these lands might, of right, be given to the defendant, without doing injustice, &c.; and of this, we have evidence in this recital of the conveyance, 'being the same tracts formerly belonging to *Winthrop Sargent* and *John Steele*, and which, by conveyance of his share by said *John Steele* to said *Winthrop Sargent*, became wholly vested in *Winthrop Sargent*, in fee simple.' The donor appeared to consider them as of right the patrimony of the only son of her last husband, and, we think, she made the conveyance in furtherance of that idea, to the exclusion of the relatives of the half blood."

Now, as to the description of the land having been acquired from *John Steele*, &c., this does not constitute an express declaration, that the donation was intended as an extra portion, nor does it amount to a declaration in equivalent terms, under art. 1311; and we respectfully urge that, unless it amounts to such a declaration, it cannot overcome the positive presumption of the Code, that collation is intended and understood. But what does the expression amount to? It is mere description of the property. It contains no declaration

*Margin right:*
URQUHART
*v.*
SARGENT.

URQUHART
v.
SARGENT.

of motive or intention. The motive or consideration had already been fully expressed. It was "natural affection for (her) son." But the court says this land originally belonged to the defendant's father, and therefore *Mrs. Sargent* thought he had a right to it. We see no warrant for this presumption. At the time of the donation, the land belonged to her absolutely, at least the portion we claim to be collated; the heirs were all equally of her blood, and there is nothing to show that she 'did not equally regard them. On the contrary, her will shows that they occupied perfect equality in her regard. By her will, she divides her estate equally among them. This estate consisted of lands principally in Louisiana; among these lands are the Thompson tracts, which the court has decided in this very case, are to be divided between defendant and the children of the first marriage. Now, if *Mrs. Sargent*, in her will, made no distinction among her children as to the origin of the property, why should it be presumed she intended it by the conveyance to defendant? The *Thompson* lands came to her by inheritance from one of her children of the first marriage; the lake St. John tract came to her in part as community property, and part by inheritance from one of the children of the second marriage. She divides the *Thompson* tracts equally between the children of both marriages. We think this affords strong presumption, that she *did not* intend the donation of the lake St. John tracts to be an extra portion, but that they should be collated. But on which ever side may be the weight of presumption, is of little importance; we invoke the benefit of articles 1307, 1308, 1309, 1310 and 1311 of the Louisiana Code, and under these articles deny the right of the court *to presume* that collation was not intended, unless such presumption is drawn from an *express declaration* of the donor to that effect.

IV. The conveyance from *Mary Sargent* to defendant, is null and void. As a sale, it is clearly void for want of a serious price, according to the authorities already cited above. It is void as a donation for want of form; it not being executed in the manner and with the solemnities required by the Code. We have already attempted to show that this was not a sale but a donation *inter vivos.* The Civil Code, art. 1523, declares that "an act shall be passed before a notary public and two witnesses, of every donation *inter vivos* of immovable property, of slaves or incorporeal things, such as rents, credits, rights or actions, *under the penalty of nullity.*" In the present case, the donation is by private act. It was executed in presence of three witnesses, but not before a notary. After its execution, it was acknowledged before the mayor of Philadelphia. This is clearly not an authentic act under the provision of the article just cited, and we contend that it is null. The corresponding article of the Code of 1808, was different in its phraseology, and was subjected to a different construction. That article (53, Code of 1808, p. 220,) declared "*all acts* containing donations *inter vivos*, must be passed before a notary public and two witnesses, &c., otherwise they are null and void.

In the case of *Trahan v. McManus*, 2 La. 209, the court decided that a donation under the form of an onerous contract, was not void, because not made as an authentic act. But the reason given by judge Porter, is founded upon the peculiar phraseology of the old Code, He says: "The opinion called for embraced the question whether a donation under the form of an onerous contract, was null and void. This our Code has not said. It does not declare that *all donations* shall be null and void, unless they pursue the form indicated." Again, in the same opinion, "the prohibition does not extend to the contract, but to the instrument which is the evidence of it. If the legislature had intended to prohibit *all donations* except those by public act, it must be presumed they would have said so, and would not have limited it to *acts which contain them.* A benefit disguised under the form of an onerous contract, is an indirect donation, and is not *contained in the act.*" Article 1523 of the new Code, is not subject to this technical construction. It declares that "an act shall be passed before a notary public and two witnesses, of *every donation inter vivos.*" This donation was not passed before a notary and two witnesses; it is therefore null and void.

But this article has been already adjudicated upon. In *Flores v. Lemée, adm.'r*, 16 La. 273, the court says a donation cannot be *validly made in any other form* but that pointed out by articles 1523 et seq. under the penalty of nullity.

The question came up more directly in *Britain v. Richardson*, 3 Rob. 68. The question was, whether a note for $4,000, executed for an inconsiderable consideration, could stand as a disguised donation *mortis causa.* The court says, "an instrument, the real object of which was a disposition *mortis causa*, if executed without the formalities required by law to give it validity as such, can have no effect." The court further says that, the same rule is applicable to donations *inter vivos*, and that "all donations *inter vivos*, must be passed before a notary and two witnesses." They also notice the case of *Trahan v. McManus*, and note the difference between the old and new Codes on this point.

In conclusion, it may be proper to remark, that this last point was not made in the argument, because it was supposed the liability of the defendant to collation, would not be disputed. Indeed, defendant's answer admits the liability to a certain extent. It is further respectfully urged, that if the court does not feel authorized, under the pleadings, to annul the donation, it will so modify the judgment as to dismiss our bill *without prejudice*, and reserve to us the right to attack the donation in a more formal manner.

*Rehearing refused.*